Candler vs. Hammond.

EZEKIEL S. CANDLER, claimant, plaintiff in error, vs. JOHN HAMMOND, escheator, defendant in error.

[1.] In some special cases, a motion for a new trial may be made after a motion in arrest of judgment.

[2.] In extraordinary cases, where the ends of justice require it, and the cause is still within the control of the Court, a rule nisi may be moved after the expiration of the Term at which the trial was had.

[3.] If a brief of evidence on a motion for a new trial, be made out, agreed to, and filed at the Term of the Court when the application is made, it is in time.

[4.] It is too late for a party to object to the form of the oath administered to the jury, after he has allowed the case to proceed without objection and stood the chances for a verdict.

[5.] Deed manumitting a slave, executed in the State of New Jersey under the laws thereof, good and valid on the face of it, is admissible in evidence, and

whether it was a part of a proceeding violative of the laws of Georgia and depending on other evidence is a question for the jury.

Motion for new trial, in Baldwin Superior Court. Decision by Judge HARDEMAN, at August Term, 1857.

This case was tried at February Term, 1857, when the jury found for the escheator, and the defendant moved in arrest of judgment, on the ground that the jury were not sworn as required by Act of 1819. The presiding Judge granted the motion, and counsel for the escheator excepted, and the case coming up before the Supreme Court, at Milledgeville, May Term, 1857, that Court reversed the judgment of the Court below, on the ground that there was nothing in the record which showed that the proceedings were irregular, or that the jury was not legally sworn.

At the August Term of the Superior Court of said county, the judgment of the Supreme Court, was made the judgment of that Court, and that the escheator have leave to enter up judgment, *nunc pro tunc*, on the verdict.

At the same Term, counsel for defendant moved for a new trial on the following grounds:

1st. Because the jury were not sworn as required by the escheat law.

2d. Because the contract between Joe, the free man of color, and his master for his manumission, was void, and the Court erred in permitting the deed of manumission to be read in evidence.

Counsel for the escheator showed for cause against the motion:

1st. That the Court has no power at this Term to entertain a motion for a new trial, the verdict having been rendered at February Term, and no motion having then been made and entered on the minutes, or no brief of evidence filed, for a new trial.

2d. That after verdict for plaintiff at February Term, de-

fendant's counsel served counsel for escheator with notice of a rule *nisi* for a new trial on one of the same grounds now relied on, after which he abandoned said rule, and moved for and obtained an arrest of judgment.

3d. That defendant having at the former Term moved for arrest of judgment, on one of the same grounds now relied on for new trial, which motion was granted, but afterwards reversed by the Supreme Court, he has no right now to move for a new trial.

4th. That having submitted to be tried by the special jury under their usual oath, without objection, and knowing that they had not been sworn as required by the Escheat Act of 1817, the defendant has thereby waived all right of the exception to the jury, after verdict.

5th. That no defect of justice has occurred in the trial, the same having been fair and full, and not excepted to at the time. Substantial justice has been done, and the verdict rendered under the solemnity of the special jury oath.

6th. That the special jury oath of 1811, which was administered in this case, includes substantially and almost literally the escheat clause oath of 1817, and therefore *after verdict,* is sufficient.

7th. That the record is silent as to what oath was administered to the jury, and therefore after verdict, the law presumes the proper oath was administered.

8th. That the jury were properly sworn.

9th. That without regarding the deed of Thadeus G. Holt, the former owner of Joe, to Thomas Butler, in May, 1821, and whether it was valid or void, the evidence of said Holt shows that he had abandoned him as property ever since the date of the deed, making no claim to him, nor exercising and dominion over him or his acquisitions; and the evidence of Jos. Simpson and the Book of Enrollments of free negroes of Baldwin county, and certificates of registry issued by the Clerk of the Inferior Court of said county for thirty-three years, and the tax receipts for thirty-

one years, all show that Joe was *prima facie* and presumptively free, living in a state of perfect freedom, a farmer with lands and property and household, living without the control or presence of any white man for 35 or 40 years, and having a guardian during all that time.

Judge Hardeman refused the motion for a new trial, and counsel for claimant excepts.

KENAN, ROCKWELL, and HARRIS, for plaintiff in error.

W. McKINLEY, *contra.*

*By the Court.*—McDONALD J., delivering the opinion.

The presiding Judge in the Court below put his refusal of the new trial on two grounds only, and those grounds had no reference to the merits of the application. The first ground was that an unsuccessful motion in arrest of judgment had been made in the cause; and the second ground was, that no motion for a new trial was made at the Term of the Court when the trial was had and no brief of evidence was then filed.

[1.] Whether a motion for a new trial can be made in the Courts in England, after an unsuccessful motion in arrest of judgment, is more a matter of practice than a legal rule. The practice is different in the different Courts. In the Court of excheqeur, a motion in arrest of judgment, was refused, because it was not made within the four first days of the Term, next after the trial of the cause, and because it was made after a rule *nisi* for a new trial had been disposed of. *Lane and another vs. Crockett*, 7. *Price* 566. In Kings Bench a motion in arrest of judgment may be made at any time before judgment entered up, and even after a rule for a new trial has been discharged. 1. *Sellon's Pract.* 497. In common pleas, a motion in arrest of judgment may be made after a new trial has been moved and refused. *Ib.* 482. This

is the practice of these several Courts in regard to motions in arrest of judgment.   The rule of practice is somewhat different in relation to  motions for new trial.   In the Court of Excheqeur, in  the case already  cited from Price, the Court said that the motion  in  arrest  of judgment and for  a new trial might  have  been  submitted in  the  alternative.   This remark cannot be  considered as  evidence of a  settled practice in that Court, but it seems to me that it would be a judicious  rule,  calculated  to  promote  the  ends  of justice.   In Sellon's practice of the Court of King's Bench and common pleas, the remark is made that a motion in arrest of judgment may be made after a new trial has been moved for and refused, but not *vice versa.*   Hence, according to that authority, a motion for a new trial  cannot be made after a motion in arrest of judgment.   In extraordinary cases, however, it has been held  that a  motion  for a new trial will be entertained after a motion in arrest of judgment.    *Tidd's  Prac.* 913.

[2.]  Motions  in  arrest  of judgment and for new  trial in England, are  not made before the justices of  assize who try the cause, but before the Court to which the record is returned, at the Term next after the trial.    Judgment can be entered in the Court only to which the proceedings are returned, and that on notice to the opposite party.   3. *Bl. Com.* 386.   Here, judgments must be  entered in  the Court where the cause was tried, and within four days after its adjournment and no notice to the opposite party is required.

The Superior Courts are  vested with power to grant new trials in such manner and under such rules  and regulations as they may establish, and according to law and the customs and  usages of Courts.   The Superior Courts have established but one  rule  in reference  to  the granting  of new trials, and that simply requires, that on every application for a new trial, a  brief  of  the  testimony in  the  cause  shall be  filed by  the party moving  for such new trial, under the revision and approval  of  the  Court.    61*st  common  law  rule.*   The  mode  of proceedings  in  the  English  Courts,  for  the  trial  of  causes,

their transmission of the record to another and a higher Court for final judgment, &c., are so dissimilar to ours, that we cannot look to them for authoritative precedents. Our Courts however, have adopted a rule of practice, which, as far as I know, prevails as a general rule, that when a party is dissatisfied with a final verdict in a cause, he must move a rule *nisi* at the Term of the Court at which the trial was had, calling on the opposite party to show cause at the next succeeding Term of the Court, why a new trial should not be granted. This is the general rule. But cases may arise, and have arisen, in which it would be proper and just for the Court to grant the rule though the Term had passed at which the trial was had. This Court has recognized the power of the Court to grant a new trial, after the expiration of the Term, at which the cause was tried, in peculiar and extraordinary cases. *Graddy vs. Hightower et al.,* 1. *Kelly's Rep.* 253. Courts of equity will, sometimes, grant new trials in Courts of law, or do what is equivalent thereto.

Indeed, there was a time, when Courts of law would scarcely grant them, and the resort that a party aggrieved by any unjust and oppressive verdict, was principally to a Court of Chancery. Things have changed, and Courts of law have, for a great while, exercised liberally the power, of granting new trials, and, for that reason, Courts of Equity have been less disposed to interfere with verdicts rendered in common law Courts. In extraordinary cases therefore, where the cause is still under the power of the Court which tried it, we see no reason, that if the justice of the case may require a new trial, why it should not grant it. In this case, there is patent in the record a sufficient reason wherefore the defend-ant's counsel may have abandoned the motion which they made for a new trial. They supposed that they had good ground for arresting the judgment of the Court, and their judgment in this respect was fortified by the presiding Judge, who granted the motion to arrest it. This Court reversed that judgment, and when the case was remitted to the Court

Candler vs. Hammond.

below, they renewed the motion for a new trial. Under the special circumstances of this case, the Court ought to have heard the motion on its merits.

[3.] We think that the Court below misinterpreted the 61st rule of Court by holding that a brief of the testimony must have been filed at the Term of the Court when the trial was had. The rule of Court is that the party applying for a new trial must file a brief of the evidence under the revision and approval of the Court. If the circumstances of the case authorize the hearing of the motion for a new trial, after the expiration of the Term at which the cause was tried, it is quite sufficient, if the brief be then filed. In this cause a brief of the evidence was made out and agreed upon by the parties, and filed at the time of the application. We think that the rule of Court was substantially complied with and that the new trial ought not to have been refused for the second reason assigned in the judgment of the Court below.

[4.] We infer from the record that the presiding Judge did not consider the merits of the motion for a new trial. He passed no judgment thereon. We have looked into them and are of opinion that the rule ought to have been refused. It was too late for the defendant to object to the form of oath administered to the jury, after he had proceeded to trial without objection on that account. He was willing to risk the chances of a verdict in his favor, under the oath as administered, and it is now too late, after a verdict against him, to object.

[5.] In respect to the other ground, it appears that Joe Butler was manumitted in the State of New Jersey by a proceeding under the laws of that State. There is nothing on the face of the deed of manumission showing that it was a part of a proceeding originating in a purpose to violate a law of Georgia. There was, therefore, no ground of demurrer to it as evidence. It was a matter for the determination of the jury.

The members this Court are not agreed as to the right or

power of the Court below to look beyond the grounds for a trial taken specially in the motion, so we forbear to pronounce any judgment on the merits, further than is indicated above.

Judgment reversed.